IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Minor J.S. by her Next Friend JAMIE SEARCY, and JAMIE and NATHAN SEARCY, Individually,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　Serve:<br>　　Honorable Tammy Dickinson<br>　　United States Attorney<br>　　Western District of Missouri<br>　　400 East 9th St., Room 5510<br>　　Kansas City, MO 64106,<br><br>　　Honorable Loretta Lynch<br>　　United States Attorney General<br>　　U.S. Department of Justice<br>　　950 Pennsylvania Avenue, NW<br>　　Washington, D.C. 20530,<br><br>　　Honorable Sylvia Mathews<br>　　Burwell,<br>　　Secretary of the U.S. Department<br>　　of Health and Human Services<br>　　Hubert H. Humphrey Building<br>　　200 Independence Ave., S.W.<br>　　Washington, D.C. 20201,<br><br>　　　　　Defendant. | Case No. 16-4266 |

## PLAINTIFFS' COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Jamie and Nathan Searcy, individually, and Jamie Searcy as Next Friend of minor J.S., by counsel, and for their causes of action against Defendant, allege and state as follows:

**PLAINTIFF JAMIE SEARCY**

1.  At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Plaintiff Jamie Searcy has been a competent adult over eighteen years of age and a resident of Camdenton, Camden County, Missouri.

2.  At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Plaintiff Jamie Searcy was the natural mother of minor Plaintiff J.S.

## PLAINTIFF NATHAN SEARCY

3.  At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Plaintiff Nathan Searcy has been a competent adult over eighteen years of age and a resident of Camdenton, Camden County, Missouri.

4.  At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Plaintiff Nathan Searcy was the natural father of minor Plaintiff J.S.

## PLAINTIFF J.S. BY NEXT FRIEND JAMIE SEARCY

5.  At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Plaintiff J.S. has been a minor child under eighteen years of age.

6.  Jamie Searcy is the natural mother of Plaintiff J.S., and as such, is a proper party to be appointed by the Court as Next Friend of minor Plaintiff J.S. for the purpose of pursuing Plaintiff J.S.'s causes of action against the above-named Defendant.

7.  A Motion for Appointment of Jamie Searcy as Next Friend of minor Plaintiff J.S. has been filed with the Court per F.R.C.P. 17(c)(2).

## DEFENDANT UNITED STATES OF AMERICA

8.  At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Defendant United States of America (hereinafter "Defendant") provided

federal funding to Richland Medical Center, Inc. d/b/a Central Ozarks Medical Center for public health services.

9. At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Robert Nielsen, D.O. was a Missouri licensed physician in the practice of obstetrics and gynecology representing and holding himself out to the public, and in particular to Plaintiffs, as such.

10. At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Dr. Nielsen was acting within the course and scope of his duties as an employee of Richland Medical Center, Inc. d/b/a Central Ozarks Medical Center and Defendant.

11. Pursuant to the Federally Funded Health Centers Assistance Act, 42 U.S.C. §§ 233(g)-(n), the Secretary of the United States Department of Health and Human Services may deem a public or non-profit private entity receiving federal funds to be an employee of the Public Health Service.

12. 42 U.S.C. §233(g)(1) confers on an entity deemed to be an employee of the Public Health Service, and on the employees of such entity, the protection accorded to Public Health Service employees by 42 U.S.C. § 233(a) with the exclusive remedy to be against the United States under the Federal Tort Claims Act (hereinafter "FTCA").

13. Richland Medical Center, Inc. d/b/a Central Ozarks Medical Center and Dr. Nielsen have been deemed employees of the Public Health Service.

14. Richland Medical Center, Inc. d/b/a Central Ozarks Medical Center and Dr. Nielsen have been eligible for FTCA coverage for medical malpractice since January 1, 2011 and their coverage has continued without interruption since that date.

3
Case 2:16-cv-04266-NKL   Document 1   Filed 10/13/16   Page 3 of 13

15. Pursuant to 28 U.S.C. §1346(b), 28 U.S.C. §2671-2680 and 42 U.S.C. § 233(a), this action against Defendant is Plaintiffs' exclusive remedy for legal actions arising against Richland Medical Center, Inc. d/b/a Central Ozarks Medical Center and Dr. Nielsen for conduct in his course and scope of employment.

16. Plaintiffs are barred from bringing suit directly against Richland Medical Center, Inc. d/b/a Central Ozarks Medical Center and Dr. Nielsen.

17. Service of Defendant was completed pursuant to F.R.C.P. 4(i) by delivering a copy of the Summons and Complaint to: 1) the Honorable Tammy Dickinson, United States Attorney, Western District of Missouri, 400 East 9th St., Room 5510, Kansas City, MO 64106; 2) the Honorable Loretta Lynch, United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530; and 3) the Honorable Sylvia Mathews Burwell, Secretary of the U.S. Department of Health and Human Services, Hubert H. Humphrey Building, 200 Independence Ave., S.W., Washington, D.C. 20201.

**AGENCY**

18. At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Defendant was acting by and through its actual, ostensible or apparent agents and employees, including but not limited to Dr. Nielsen, in providing medical care and treatment to Plaintiffs.

19. At the time of the negligent acts complained of herein and at all times mentioned, Defendant's actual and apparent agents and employees, including but not limited to Dr. Nielsen, were acting within the course and scope of their employment in providing medical care to Plaintiffs.

## VENUE AND JURISDICTION

20. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1346(b) as the United States of America is a defendant in this civil action for money damages for injuries caused by the negligent acts of an employee of the United States government while acting within the scope of employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

21. Venue in this Court is proper pursuant to 28 U.S.C. § 1402(b) because the Plaintiffs reside in and the acts or omissions complained of occurred in the Western District of Missouri.

22. Plaintiffs satisfied the FTCA administrative requirements of 28 U.S.C. §2675 by first presenting their claims via Standard Form 95 on October 8, 2014 to the Department of Health and Human Services (hereinafter "HHS") within two years of the incident.

23. On August 6, 2015, HHS denied Plaintiffs' administrative claim for money damages in writing.

24. On January 21, 2016, HHS received Plaintiffs' request for reconsideration of the HHS denial pursuant to 28 C.F.R. § 14.9.

25. On June 14, 2016, HHS denied Plaintiffs' request for reconsideration in writing and again denied Plaintiffs' administrative claim for money damages. HHS advised that Plaintiffs are entitled to file suit in the appropriate federal district court within six months of this denial.

26. As such, FTCA administrative remedies were exhausted before this matter was instituted against Defendant.

## FACTS OF THE OCCURRENCE

27. In 2012, Plaintiff Jamie Searcy was pregnant with Plaintiff J.S. Dr. Nielsen managed the pregnancy.

28. Jamie had delivered two previous children by caesarian section (c-section).

29. The estimated due date for baby J.S. was October 8, 2012.

30. Dr. Nielsen agreed to attempt to deliver baby J.S. vaginally.

31. In a mother who has previously delivered a baby by c-section, a subsequent vaginal delivery is called a VBAC (Vaginal Birth After Caesarian) delivery.

32. One concern during a VBAC delivery is uterine rupture - whereby the uterus breaks open at the old c-section scar.

33. If a uterine rupture occurs during a VBAC delivery, an emergency c-section is necessary to prevent life-threatening harm to mom and baby such as blood loss and lack of oxygen.

34. Pregnant mothers attempting VBAC are monitored continuously during labor by electronic fetal monitoring because a change in the baby's heartbeat is usually the earliest sign of trouble.

35. Electronic fetal monitoring detects and records both baby's heartbeats and the strength and duration of mom's uterus contractions.

36. At approximately 6:45 p.m. on October 13, 2012, Jamie was admitted to Lake Regional Hospital by Dr. Nielsen for induction of labor and delivery of baby J.S.

37. Electronic fetal monitoring was affixed to Jamie's abdomen.

38. Induction of labor and delivery was initiated by artificial rupture of Jamie's membranes at approximately 8:20 p.m. on October 13, 2012.

39. At approximately 7:30 a.m. the next morning on October 14, 2012, a medication called Pitocin was started per Dr. Nielsen's order to expedite Jamie's labor.

40. By approximately 9:00 a.m., electronic fetal heart monitoring began identifying negative changes in baby J.S.'s heartbeat.

41. At approximately 9:59 a.m., labor and delivery nurses put Jamie in the operating room and requested STAT assistance for an emergency c-section to deliver baby J.S.

42. Dr. Nielsen arrived in the operating room at approximately 10:08 a.m.

43. At 10:11 a.m., Dr. Nielsen delivered baby J.S. via emergency c-section.

44. During the c-section, Dr. Nielsen discovered that Jamie had a uterine rupture and the prior c-section scar on her uterus had opened up.

45. Upon delivery, baby J.S. had no respirations and was limp and blue-colored due to insufficient oxygen.

46. Baby J.S. underwent resuscitation efforts and was transferred to University of Missouri Children's Hospital where she was eventually diagnosed with cerebral palsy and brain damage from a lack of oxygen during labor and delivery.

## COUNT I
### (Medical Negligence v. Defendant)

COME NOW Plaintiff J.S., by her Next friend Jamie Searcy, and Plaintiffs Jamie and Nathan Searcy, individually, by counsel, and for Count I against Defendant, state and allege as follows:

47. Plaintiffs hereby incorporates paragraphs 1 through 46 above, as though fully set forth herein.

**DEFENDANTS USA'S ACTS AND OCCURRENCES OF NEGLIGENCE**

48. At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Defendant, by and through its actual, ostensible and apparent agents and employees, including but not limited to Dr. Nielsen, had a duty to possess and use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession and specialty in the care and treatment of Plaintiffs.

49. Defendant breached its duty and is responsible for the following acts and occurrences of negligence and carelessness:

   a. In negligently and carelessly choosing to attempt a VBAC delivery of Plaintiff J.S.;

   b. In negligently and carelessly performing a VBAC delivery of J.S.;

   c. In negligently and carelessly failing to timely identify negative changes in electronic fetal monitoring of Jamie and/or J.S.;

   d. In negligently and carelessly failing to timely recognize the significance of negative changes in electronic fetal monitoring of Jamie and/or J.S.;

   e. In negligently and carelessly failing to timely monitor the electronic fetal monitoring of Jamie and/or J.S.;

   f. In negligently and carelessly failing to be readily available during VBAC labor and delivery in case of a medical emergency;

g. In negligently and carelessly failing to timely respond to ominous signs on the electronic fetal monitoring of Jamie and/or J.S.;

h. In negligently and carelessly failing to properly monitor Jamie Searcy during her labor and delivery of J.S.;

i. In negligently and carelessly failing to timely involve/advise a pediatrician of a pending VBAC delivery attempt

j. In negligently and carelessly failing to timely perform a cesarean section to deliver J.S.; and

k. In negligently and carelessly failing to measure up the requisite standards of due care and skill required and observed by licensed physicians and in further particulars presently unknown to Plaintiffs but which are verily believed and alleged, will be disclosed upon proper discovery procedures during the course of this litigation.

## **PLAINTIFF J.S.'S INJURIES**

50. As a direct and proximate result of the carelessness and negligence of Defendant, as more fully set forth above, Plaintiff J.S. suffered the following severe, permanent and progressive injuries:

   a. Hypoxia (oxygen deprivation);

   b. Permanent, irreversible, debilitating and disabling brain damage;

   c. Quadriplegic cerebral palsy;

   d. Developmental delays, including but not limited to, lack of motor control and inability to feed herself; and

e. Physical pain and suffering and mental anguish consistent with persons diagnosed with cerebral palsy.

**PLAINTIFF J.S.'S DAMAGES**

51. As a direct and proximate result of the carelessness and negligence of Defendant, as more fully set forth above, Plaintiff J.S. sustained severe, permanent, devastating and progressive injuries to her brain.

52. As a direct and proximate result of the carelessness and negligence of Defendant, as more fully set forth above, Plaintiff J.S. has been caused to experience great physical pain and mental anguish and she will continue to suffer.

53. As a direct and proximate result of the carelessness and negligence of Defendant, as more fully set forth above, Plaintiff J.S. has been caused and will be caused to suffer embarrassment, anguish and humiliation consistent with persons who have been diagnosed with and suffer from cerebral palsy.

54. As a direct and proximate result of the carelessness and negligence of Defendant, as more fully set forth above, Plaintiff J.S. will suffer lost wages into the future as an individual diagnosed with and suffering from cerebral palsy.

55. As a direct and proximate result of the negligence and carelessness of Defendant, as set forth more fully above, Plaintiff J.S. has required past medical care and will require future medical care consistent with persons diagnosed with cerebral palsy.

56. As a direct and proximate result of the negligence and carelessness of Defendant, as set forth more fully above, Plaintiff J.S. has incurred past medical costs and will incur future medical costs consistent with persons diagnosed with cerebral palsy.

57. As a direct and proximate result of the negligence and carelessness of Defendant, as set forth more fully above, Plaintiff J.S. has suffered the loss of the use and enjoyment of various physical capacities and the loss of enjoyment of life.

58. As a direct and proximate result of the negligence and carelessness of Defendant, as set forth more fully above, Plaintiff J.S. will need assistance with activities of daily living and household tasks for the rest of her life.

## PLAINTIFFS JAMIE AND NATHAN SEARCY'S DAMAGES

59. As a direct and proximate result of the negligence and carelessness of Defendant, as set forth more fully above, Plaintiffs Jamie and Nathan Searcy have incurred past medical and other costs for the medical care of J.S. and will incur future medical costs on her behalf consistent with persons diagnosed with cerebral palsy.

WHEREFORE, Plaintiff J.S., by her Next Friend Jamie Searcy, and Plaintiffs Jamie and Nathan Searcy, individually, seek judgment against Defendant for such sums as are fair and reasonable, together with any and all costs herein incurred and expended, and for such other relief as the Court deems just and proper.

## COUNT II
### (Lost Chance of Recovery v. Defendant)

COME NOW Plaintiff J.S., by her Next Friend Jamie Searcy, and Plaintiffs Jamie and Nathan Searcy, individually, by counsel, and for Count II against Defendant, allege and state as follows:

60. Plaintiffs hereby incorporate by reference paragraphs one 1 through 59 above, exclusive of the prayer for relief in Count I, as if fully set forth herein.

61. At the time of the negligent acts and occurrences complained of herein and at all times mentioned, Plaintiff J.S. suffered from a medical condition that if promptly and properly cared for and treated, she held a statistically significant and material chance of gaining a full recovery.

62. Defendant acted negligently and carelessly in their care and treatment of Plaintiffs in the particular respects more fully set forth above.

63. As a direct and proximate result of the negligence and careless of Defendant, as set forth more fully above, Plaintiff J.S. lost a statistically significant and material chance of a full recovery.

64. Such lost chance of recovery was material and resulted in Plaintiff J.S. suffering severe, permanent and devastating injuries as more fully set forth above. Such damages would not have been sustained or would have been minimized had Defendant not been negligent in the manner set forth above.

65. As a direct and proximate result of the negligence and carelessness of Defendant, Plaintiffs Jamie and Nathan Searcy have incurred past medical and other costs for the medical care of J.S. and will incur future medical costs on her behalf consistent with persons diagnosed with cerebral palsy.

WHEREFORE, Plaintiff J.S., by her Next Friend Jamie Searcy, and Plaintiffs Jamie and Nathan Searcy, individually, by counsel, seek judgment against Defendant for such sums as are fair and reasonable, together with any and all costs herein incurred and expended, and for such other relief as the Court deems just and proper.

Respectfully submitted,

VOTAVA, NANTZ & JOHNSON, LLC

BY: /s/ Brett Votava

    BRETT VOTAVA    MO #51228
    TODD JOHNSON    MO #48824
    9237 Ward Parkway, Suite 240
    Kansas City, MO 64114
    (816) 895-8800
    (816) 895-8801 (fax)
    ATTORNEYS FOR PLAINTIFFS
    bvotava@vnjlaw.com
    tjohnson@vnjlaw.com